United States Court of Appeals

For the Eighth Circuit

_____

No. 11-3321
_____

United States of America

*Plaintiff - Appellee*

v.

Roberto Rodriguez

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - Joplin

_____

Submitted: February 14, 2013
Filed: April 4, 2013

_____

Before RILEY, Chief Judge, LOKEN and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

    Roberto Rodriguez appeals his conviction of charges related to methamphetamine and firearms. A jury found him guilty and the district court[1] sentenced him to concurrent terms, totaling 292 months imprisonment. He raises several issues related

---

[1]The Honorable Richard E. Dorr, United States District Judge for the Western District of Missouri.

Appellate Case: 11-3321    Page: 1    Date Filed: 04/04/2013 Entry ID: 4021564

to the government's investigation, the sufficiency of the evidence, and his sentence. We affirm.

## I.

Roberto Rodriguez was driving east toward Springfield, Missouri when he was pulled over for a traffic violation at approximately 11:30 p.m. on December 7, 2009. The car he was driving did not have license plates and the registration had expired. When Officer Joshua Hicks approached the car, he noticed a television and speakers in the back seat and a passenger, Joe Murillo, who was in the front seat. Hicks asked Rodriguez for his driver's license. Rodriguez replied that his license was suspended but gave his date of birth. The car was registered to an Ashley Henderson. Rodriguez said she was a friend. After Hicks returned to his squad car, he ran a record check and learned that a felony warrant for Rodriguez's arrest was potentially pending in San Bernardino, California. During the record check, Hicks noticed Rodriguez and Murillo reaching for the floorboard and looking back toward him.

Hicks called for backup, and another officer arrived. Concerned for their safety, the officers instructed Rodriguez to exit the car. Hicks then asked Rodriguez what he had been searching for in the car. Rodriguez told him a handgun was in the center console. Because of the weapon, Hicks handcuffed Rodriguez, but told him that he was not under arrest. Hicks then put Rodriguez in the back of his squad car. The other officer handcuffed Murillo, putting him in a separate squad car. Hicks then asked Rodriguez if there was any other contraband in the car. Rodriguez told Hicks there was a methamphetamine pipe under his seat. Hicks searched the car and found a cocked pistol with a round in the chamber. Hicks also found the pipe under the driver's seat. Hicks field tested the pipe. It was positive for methamphetamine, and Hicks arrested Rodriguez.

A couple months later on February 1, 2010, a Missouri State Highway Patrol SWAT Team forcibly entered Rodriguez's home at 4:00 a.m. to execute a search warrant. A cooperating informant had identified Rodriguez and Murillo as methamphetamine dealers. Additionally, a cable-installation technician, who used to be a police officer, reported suspicious activity, a marijuana odor, and the smell of chemicals associated with methamphetamine to authorities after servicing Rodriguez's home. Based on the two informants and the December 7, 2009 stop, the government applied for and received a warrant to search the home. When the SWAT Team entered, Rodriguez tried to escape out of a second-story window. They apprehended Rodriguez on the roof and Murillo in the house. After securing the residence, officers found a variety of contraband: a loaded shotgun, a handgun, scale, pipes, 86 grams of methamphetamine, and what appeared to be a drug ledger.

A grand jury charged Rodriguez in a six-count indictment on May 12, 2010, and police arrested him on May 19, 2010. Count 1 of the indictment charged Rodriguez with conspiring to distribute 50 grams or more of a substance containing a detectable amount of methamphetamine, a violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B). Counts 2 and 4 charged him with being a convicted felon and user of a controlled substance in possession of a firearm, a violation of 18 U.S.C. §§ 922(g)(1), 922(g)(3), and 924(a)(2). Count 3 alleged that Rodriguez, aided and abetted by another, possessed 50 grams or more of a mixture containing methamphetamine with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1), 841(b)(1)(B), and 18 U.S.C. § 2. Count 5 charged Rodriguez with violating 18 U.S.C. §§ 922(j) and 924(a)(2) by possessing a stolen gun. Finally, Count 6 charged Rodriguez with knowingly maintaining a place, his home, for the purpose of using and distributing methamphetamine, a violation of 21 U.S.C. § 856(a)(1).

Rodriguez pled not guilty and filed four motions to suppress, challenging (1) his December 7, 2009 statements to officers, (2) the December 7, 2009 seizures, (3) the search warrant for his home, and (4) his statements made when his home was

searched. The magistrate judge issued a report recommending that Rodriguez's motions be denied. After considering Rodriguez's motions and conducting a de novo review, the district court adopted the magistrate judge's findings and denied the motions to suppress.

The case proceeded to trial. The government's evidence against Rodriguez primarily consisted of the testimony of the agents and officers who investigated him, as well as former associates who testified against Rodriguez in exchange for favorable treatment. Specifically, Michael Warren and Ashley Henderson, an engaged couple who had lived with Rodriguez, testified that they drove Rodriguez to his supplier and observed Rodriguez handle guns. They also described his system for processing and distributing methamphetamine.

After the government rested, Rodriguez moved for an acquittal. Rodriguez did not present any evidence in his defense, rested his case, and renewed his motion for an acquittal. The district court denied both motions. The jury convicted Rodriguez on all Counts but Count 5, which the government dropped at trial. After the trial, Rodriguez filed a brief renewing his motion for acquittal based on a variety of issues. This district court denied this motion, upholding the jury's verdict.

Before Rodriguez's sentencing, his attorney filed a letter objecting to findings contained in the presentence investigation report (PSR) prepared by the probation office. In this letter, Rodriguez specifically referenced "Pages 11-24, Paragraphs 56-82" of the PSR and "object[ed] to all of the factual statements concerning his criminal history, your conclusions as to his identity, and your calculation of the criminal history." Subsequently, at the beginning of the hearing, Rodriguez's attorney renewed all of the objections which were made in the letter of objections. With regard to Rodriguez's prior convictions, his attorney argued that "the burglary conviction from California is not a felony and should not be counted." The district court overruled Rodriguez's objections and found that Rodriguez had a criminal

-4-

history category of 4, a base offense level of 37, and a guideline range of 292 to 365 months. Rodriguez was sentenced to a total term of 292 months imprisonment. He now appeals.

II.

Rodriguez raises six arguments on appeal related to the investigation, trial, and sentence. We address each in turn.

A.

Three of Rodriguez's arguments are based on the district court's denial of his motions to suppress evidence. The first two relate to the December 7, 2009 traffic stop, and the third relates to the February 1, 2010 search of his home. In the context of a motion to suppress, we review findings of fact for clear error and legal conclusions de novo. United States v. Rodriguez-Arreola, 270 F.3d 611, 615 (8th Cir. 2001). The district court's conclusion regarding a motion to suppress will be affirmed "unless it is not supported by substantial evidence on the record; it reflects an erroneous view of the applicable law; or upon review of the entire record, the appellate court is left with the definite and firm conviction that a mistake has been made." Id. (internal quotation marks omitted).

1.

Rodriguez first contends that he was "in custody" within the meaning of Miranda v. Arizona, 384 U.S. 436 (1966), when he was asked to exit his vehicle on

December 7, 2009, during a traffic stop.[2]  He argues the district court erred in denying his motion to suppress the statements he made after he was asked to exit his vehicle.

"The Supreme Court has analogized roadside questioning during a traffic stop to a Terry stop, which allows an officer with reasonable suspicion to detain an individual in order to ask 'a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions.'" Rodriguez-Arreola, 270 F.3d at 617 (quoting Berkemer v. McCarty, 468 U.S. 420, 439 (1984)).  In Berkemer, the Court held that the driver was not "taken into custody" for Miranda purposes during a roadside stop until the police officer arrested him. Berkemer, 468 U.S. at 442.  As a result, courts should look for the "functional equivalent of formal arrest" when considering whether Miranda applies to a traffic stop.  See id.

Officer Hicks asked Rodriguez to step out of the car because he believed Rodriguez could be dangerous.  In addition to the suspicious nature of the car and a possible outstanding felony warrant, Hicks observed Rodriguez reaching around the car and looking back at him.  After Rodriguez told Hicks that he had a handgun in the car, Hicks handcuffed Rodriguez but told him that he was not under arrest. "Numerous cases have held that a police officer's use of handcuffs can be a reasonable precaution during a Terry stop."  United States v. Miller, 974 F.2d 953, 957 (8th Cir. 1992).  In this case, asking a driver to exit the car was not the "functional equivalent of formal arrest," see Berkemer, 468 U.S. at 442, because Hicks was temporarily detaining Rodriguez to investigate Rodriguez's identity and a potential arrest warrant in California, see Rodriguez-Arreola, 270 F.3d at 617

---

[2] Whether Rodriguez was in custody while handcuffed in the back of the squad car, even if he was not in custody when asked to exit the vehicle, was "not raised, briefed, or argued on appeal," and thus we do not consider it.  See Lufkins v. Leapley, 965 F.2d 1477, 1485 (8th Cir. 1992).

-6-

(internal quotation marks omitted). Therefore, the district court correctly denied the motion to suppress.

2.

Rodriguez's second argument is tied to the first. He argues that the search of the car was an improper search incident to an arrest, citing Arizona v. Gant, 556 U.S. 332 (2009). The government responds that the search was proper under the automobile exception, which allows law enforcement officials to search a car without a warrant if they have probable cause. See United States v. Fladten, 230 F.3d 1083, 1085 (8th Cir. 2000) (per curiam). "Probable cause exists when, given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime would be found in a particular place." Id. After Rodriguez told Hicks that a handgun and a methamphetamine pipe were located in the vehicle, probable cause existed to search the car. As a result, the district court did not err in denying Rodriguez's motion to suppress.

3.

Next, Rodriguez argues that the February 1, 2010 search of his home was improper because the affidavit did not establish probable cause for issuing a search warrant and because the firearms which were seized were not listed in the warrant. The government responds that the two sources referenced in the affidavit supplied reliable, incriminating information about Rodriguez that was separately corroborated and that Rodriguez's firearms were seized under the plain view doctrine.

Issuance of a search warrant must be supported by probable cause, and "[t]he existence of probable cause depends on whether, in the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place." United States v. Solomon, 432 F.3d 824, 827 (8th Cir. 2005)

(internal quotation marks omitted). We "accord[] great deference to a magistrate's determination as to whether an affidavit establishes probable cause." Id. (internal quotation marks omitted). Instead of reviewing an affidavit in a "hypertechnical fashion," courts should apply a "common sense approach." Id. If the affidavit relies on information from an informant, "the informant's reliability, veracity, and basis of knowledge are relevant to whether the affidavit provided probable cause to support the search." Id.

Agent Adam Crouch applied for a warrant to search the home located at 109 Broadway in Monett, Missouri. In his affidavit supporting the warrant, he detailed information he received from a confidential source who was a former law enforcement officer. This source had smelled marijuana in the home, observed suspicious behavior, and smelled chemicals associated with methamphetamine production. A separate cooperating source had told him that the residents of the home were distributing methamphetamine and were known to drive a blue Ford Expedition. Crouch corroborated the two sources with outside information, and "[i]t is well established that even the corroboration of minor, innocent details can suffice to establish probable cause." See id. at 828 (internal quotation marks and alteration marks omitted). First, he had seen the same blue vehicle in front of Rodriguez's residence. Second, the December 2009 traffic stop corroborated the belief that Rodriguez was dealing methamphetamine—Rodriguez and Murillo were stopped in a blue Ford Expedition, gave 109 Broadway as their residence, were found with a methamphetamine pipe, and had a loaded handgun.

Considering the totality of the circumstances, Crouch's affidavit was sufficient to support the magistrate judge's determination that probable cause existed to issue a search warrant for 109 Broadway. See id. This affidavit cited the reliable and detailed account of two confidential sources, including a former law enforcement officer who was legally within the home, and independent information corroborated

-8-

Appellate Case: 11-3321    Page: 8    Date Filed: 04/04/2013 Entry ID: 4021564

the two sources. Therefore, we agree with the district court that probable cause existed.

Additionally, Rodriguez "argues that even if the officers were permitted to search under the mattress, they were not permitted to seize the guns because they were not listed in the warrant." The plain view doctrine allows officers to "seize an item if they have a lawful right of access to the item seized and the object's incriminating nature is immediately apparent." United States v. Nichols, 344 F.3d 793, 799 (8th Cir. 2003) (per curiam). As in Nichols, "[t]he incriminating nature of the guns was immediately apparent, as they were in close proximity to a plethora of drugs and drug-related equipment, and also because the officers were aware of [Rodriguez's] prior criminal record, likely making him ineligible to possess the firearms." See id. (internal citation omitted).

In sum, the district court was correct to deny the motion to suppress because sufficient probable cause existed for the warrant and the seizure of Rodriguez's firearms was proper.

B.

Rodriguez challenges the sufficiency of the evidence for Counts 2 and 4, possessing a firearm while being a convicted felon and user of a controlled substance. See 18 U.S.C. §§ 922(g)(1), 922(g)(3), and 924(a)(2). Rodriguez raised this issue in his renewed motion for judgment of acquittal, and we review it de novo. See United States v. Espinosa, 585 F.3d 418, 423 (8th Cir. 2009). "In reviewing for sufficiency of the evidence, we view the evidence in the light most favorable to the verdict, and we will overturn a conviction only if no reasonable jury could have concluded that the defendant was guilty beyond a reasonable doubt on each essential element of the charge." United States v. Thompson, 560 F.3d 745, 748 (8th Cir. 2009) (internal quotation marks omitted).

Rodriguez's only argument is that the government did not adequately prove that his California conviction for burglary was a crime punishable by a term of imprisonment exceeding one year. The indictment, however, alleged that Rodriguez knowingly possessed a firearm after being convicted of a crime punishable for a term exceeding one year *and* as an unlawful user of a controlled substance. The "prevailing rule" is that if "a jury returns a guilty verdict on an indictment charging several acts in the conjunctive, as [Rodriguez's] indictment did, the verdict stands if the evidence is sufficient with respect to any one of the acts charged." See Griffin v. United States, 502 U.S. 46, 56-57 (1991) (internal quotation marks omitted). On the verdict forms for Counts 2 and 4, the jury was given the option of separately finding that Rodriguez was both a felon and a user of a controlled substance in possession of a firearm. The jury answered each inquiry—felon and user—affirmatively for both Counts 2 and 4, convicting Rodriguez under each legal theory. As a result, we need not address whether the government presented insufficient evidence to the jury regarding his California conviction for burglary, because even if that were true, the government did present sufficient evidence that Rodriguez was a user of a controlled substance. See id. at 60 (holding insufficient evidence to support alternative legal theory "does not provide an independent basis for reversing an otherwise valid conviction").

It is illegal for "an unlawful user of . . . any controlled substance" to possess a firearm. 18 U.S.C. § 922(g)(3). The government is not required to prove that the defendant possessed the firearm while contemporaneously using a controlled substance. United States v. Mack, 343 F.3d 929, 933 (8th Cir. 2003). It is sufficient for the government to demonstrate use of a controlled substance "during the period of time" that the defendant possessed firearms, not that there was actual use "at the time that the officers discovered [the defendant] in possession of firearms." Id.

Viewed in the light most favorable to the jury's verdict, the evidence at trial supported the finding that Rodriguez was a methamphetamine user. Officer Hicks

-10-

testified that Rodriguez told him that he had a "dirty pipe" underneath his seat that was used for methamphetamine. The jury also heard from Michael Warren, one of Rodriguez's coworkers and friends, who testified he frequently smoked methamphetamine with Rodriguez during work breaks, at Rodriguez's home, and at Warren's apartment. Warren told the jury that when they took breaks from work to smoke methamphetamine Rodriguez would have a handgun "about 99 percent of the time." Warren's girlfriend, Ashley Henderson, testified that she used methamphetamine with Rodriguez and Warren on a daily basis at Rodriguez's home. Agent Adam Crouch testified that while executing a search warrant at Rodriguez's home at 109 Broadway, officers located a 12-gauge shotgun, a handgun, drug paraphernalia, and a large amount of methamphetamine. Crouch also testified that when Rodriguez was arrested on May 19, 2010, officers found a methamphetamine pipe and other drug paraphernalia in the car that was stopped.

The evidence presented at trial was sufficient for a reasonable jury to conclude that Rodriguez used methamphetamine "during the period of time," see id., that he possessed firearms on December 7, 2009, as alleged in Count 2, and on February 1, 2010, as alleged in Count 4. As a result, we affirm the jury's conviction and the district court's denial of Rodriguez's renewed motion for acquittal.

C.

Finally, Rodriguez argues the district court erred at sentencing when it found that (1) Rodriguez was responsible for between 500 grams and 1.5 kilograms of methamphetamine; (2) Rodriguez possessed a stolen gun; and (3) the PSR accurately reflected his criminal history.

1.

-11-

First, Rodriguez contends the district court clearly erred in finding that he was accountable for between 500 grams and 1.5 kilograms of methamphetamine. "Our review of a district court's drug quantity determination is for clear error, applying the preponderance-of-the-evidence standard, even if the evidence of quantity were insufficient for purposes of a jury's quantity calculation." United States v. Turner, 603 F.3d 468, 471 (8th Cir. 2010) (internal quotation marks omitted). Rodriguez's only argument relating to the drug-quantity finding is that the district court clearly erred by relying on the testimony of Ashley Henderson. Henderson, according to Rodriguez, was not a credible witness because not only was she uncertain about the number of times she drove Rodriguez to purchase methamphetamine, but "she was a jilted lover" who was "testifying under a grant of immunity." But "[i]t is well established that in sentencing matters a district court's assessment of witness credibility is quintessentially a judgment call and virtually unassailable on appeal." United States v. Quintana, 340 F.3d 700, 702 (8th Cir. 2003) (internal quotation marks and alteration marks omitted). Finding no clear error, we affirm the district court's drug-quantity determination.

2.

Next, Rodriguez argues the district court erred in applying a two-level enhancement for possessing a stolen firearm. See United States Sentencing Commission, Guidelines Manual, §2K2.1(b)(4). "The legal conclusions a district court reaches in order to apply an enhancement for purposes of calculating an advisory guidelines range are reviewed de novo, while the factual findings underpinning the enhancement are reviewed for clear error." United States v. Septon, 557 F.3d 934, 936 (8th Cir. 2009). At the sentencing hearing, the district court acknowledged that there was sufficient evidence to consider whether the firearm was stolen, but recognized that the enhancement did not make a difference in Rodriguez's base offense level. On appeal, the government concedes that no evidence was offered to establish that the firearm was stolen; instead, the government argues that the

-12-

Appellate Case: 11-3321    Page: 12    Date Filed: 04/04/2013 Entry ID: 4021564

application of the enhancement was harmless because Rodriguez's offense level of 37 would remain the same without such a finding. We agree.

At sentencing, Counts 1, 3, and 6, the drug offenses, were grouped together, and Counts 2 and 4, the firearm offenses, were grouped together. See U.S.S.G. §3D1.2, comment. (n.6) (Nov. 2012). The drug offenses resulted in an offense level of 37. The firearm offenses resulted in an offense level of 34, including what Rodriguez argues is an erroneous two-point enhancement for a stolen gun. The district court, however, used an offense level of 37 based on the drug offenses to calculate Rodriguez's sentence, because after the offenses are grouped, the group that results in the highest offense level is used. See id. §3D1.3(b). As a result, we need not decide whether the district court clearly erred by applying the two-point enhancement to the firearm offenses. Rodriguez's base offense level would have remained the same. See United States v. Susel, 429 F.3d 782, 784 (8th Cir. 2005) (per curiam) (finding harmless error where highest offense level remained the same, despite enhancement to the lower offense level).

3.

Finally, Rodriguez raises several issues related to his criminal history, contending the court erred by (1) adding two criminal history points for a California domestic battery conviction, (2) adding two criminal history points for a California burglary conviction, (3) adding one point to his criminal history for a Missouri conviction for failure to return leased or rented property, and (4) adding two points to his criminal history for committing a crime while on probation or parole. "We review de novo the district court's construction and interpretation of the criminal history provisions of the sentencing guidelines, and we review for clear error the district court's application of the guidelines to the facts." United States v. Williams, 533 F.3d 673, 676 (8th Cir. 2008) (internal quotation marks omitted).

-13-

Before his sentencing hearing, Rodriguez's attorney sent a letter to the probation office making a number of objections to the PSR. The letter specifically referenced "Pages 11-24, Paragraphs 56-82" of the PSR and "object[ed] to all of the factual statements concerning his criminal history, your conclusions as to his identity, and your calculation of the criminal history." This was the only objection in the letter that referenced the probation office's calculation of Rodriguez's criminal history.

At the beginning of the sentencing hearing, Rodriguez's attorney renewed his objections: "Your Honor, I, of course, renew all of the objections that I had made in my letter of objections to [the probation office] on June 15th." The only other specific reference Rodriguez's attorney made to the PSR's criminal history findings related to the California burglary conviction. Counsel said: "The defendant also objected to the criminal history. Of course, the Court will remember—in particular the defendant's insistence and objection throughout trial that he continues [sic] that the burglary conviction from California is not a felony and should not be counted."

"This court has repeatedly held that unless a defendant objects to a specific factual allegation contained in the PSR, the court may accept that fact as true for sentencing purposes." United States v. Montgomery, 701 F.3d 1218, 1223 (8th Cir. 2012) (internal quotation marks omitted). "Thus, a defendant's failure to object to the PSR's factual characterization of his conduct is dispositive." United States v. Oaks, 606 F.3d 530, 542 (8th Cir. 2010) (internal quotation marks and alteration marks omitted). "A sentencing court may accept the facts in a PSR as true unless the defendant objects to specific factual allegations." United States v. Sorrells, 432 F.3d 836, 838 (8th Cir. 2005). Vague and blanket objections lacking specific clarity are not sufficient. United States v. Davis, 583 F.3d 1081, 1096 (8th Cir. 2009). Further, merely making objections to the "summaries of the offense conduct" outlined in a client's criminal history does not put the government or district court on notice of a specific objection. Id. at 1095-96.

-14-

Appellate Case: 11-3321     Page: 14     Date Filed: 04/04/2013 Entry ID: 4021564

Rodriguez made a blanket objection to "all of the factual statements concerning his criminal history" contained across 13 pages and 22 paragraphs of the PSR. At the sentencing hearing, the district court provided the attorneys an opportunity to preserve any objections to the PSR. Aside from his specific objection to the burglary conviction, Rodriguez's attorney merely renewed his general, blanket objection instead of providing a specific basis for refuting the PSR's findings. Because this "vague, blanket objection was not made with sufficient 'specificity and clarity' to 'put the Government on notice' of the specific portions of the PSR [Rodriguez] was contesting," the district court was allowed to accept the facts in the PSR as true. See id. at 1066 (internal quotation marks omitted). Thus, the district court properly accepted the findings in the PSR regarding the California domestic battery conviction, the Missouri conviction for failure to return leased or rented property, and committing a crime while on probation or parole.

Rodriguez's attorney did, however, make a specific objection to the California burglary conviction. As a result, the district court was not allowed to merely accept the facts in the PSR regarding this aspect of his criminal history. On appeal, Rodriguez argues that there was not sufficient evidence presented to the district court for it to find that Rodriguez's conviction for first degree burglary in California resulted in at least sixty days of imprisonment. See U.S.S.G. §4A1.1(b). Noting that the burglary conviction had been extensively litigated, the district court denied Rodriguez's objection. To prove the conviction justified two criminal history points, see id., the government introduced an exhibit at the sentencing hearing containing a variety of documentation from the California court. Specifically, the court's docket sheet, under a heading titled "SENTENCING INFORMATION" states "THAT THE DEFENDANT SHALL: 01) Serve 365 days in a San Bernardino County Jail facility . . . ." Moreover, the plea agreement, which was also introduced, corroborated the sentence and read: "365 days county jail."

-15-

Rodriguez contends that these documents are not reliable because they are not the actual judgments of his conviction. An actual judgment of conviction is not required; rather, documentation must be accurate and reliable. See United States v. Stobaugh, 420 F.3d 796, 803 (8th Cir. 2005) (finding assorted computer records, booking sheets, and uncertified docket sheets accurate and reliable). As a result, the district court did not clearly err by relying on the state court's docket sheet or the plea agreement. See id. Because the evidence presented at the sentencing hearing demonstrated by a preponderance of the evidence that Rodriguez was imprisoned for at least sixty days for first-degree burglary in California, the finding of the district court is affirmed.

III.

We affirm Rodriguez's conviction and sentence.

_____